Good morning, my name is Anne Traum, appearing on behalf of Mr. Castillo. I would like to reserve two minutes for rebuttal. I'll try to keep my eye on the clock so that I have that time. Mr. Castillo claims that he was prosecuted as an adult in violation of his due process rights. As a boy of 15, neither Castillo, nor anyone else for that matter, could have foreseen that his conduct could be prosecuted criminally. Why do you say that in view of the language of NRS 62.080, which says that before the 1991 amendment, no one who has not reached the age of 16 can be certified. Certified means he's already been arrested, booked, motion made to certify him as an adult. So it's not as of the time of the crime, right? I think that's what you're talking about is exactly what the court held on the mandamus action. And just for convenience, I refer to that decision as Castillo one. So if I refer to that just as the first decision that they made in this case. The court in that case, as your question posits, focused very narrowly and exclusively on this language charged with. And that is. They read the statute. But the statute. That's taking a narrow construction of the statute, reading the words, right? Well, I actually think that that's incorrect, because to interpret the language that way, you have to throw to the wind. I mean, all arrows point in terms to the age of the child at commission of the offense as determinative for jurisdiction. Now, in this particular statute, that is charged with, in this particular transfer statute, should have been read consistently with that. And this is why. What happens when we're talking about the transfer statute? First, and this goes back to what the court said in dicta in three minors. In three minors, they talked about the charged commission of an offense. So what does that mean? There's two events that happen. First, an offense is committed. And the date of the age of the child on the date of that offense determines. The charge is made that an offense is committed. It may not have been committed. Well, first, something had to have happened. I mean, an offense had to be committed for there to believe that something had to have happened. No. The prosecuting attorney may be totally wrong that no offense was committed, but he charges it. Well, if I could just finish my thought on this, if you'll indulge me. First is that some act has to be committed, and the child's age at the time of that act is determinative of jurisdiction, just as it is in the Nevada case law with respect to every other jurisdictional statute. Second is a charging. Now, transfer is irrelevant if a felony is not charged. Then we never have a transfer issue. We have a juvenile issue. And when you get into the transfer statute, the one that's at issue here, you only get into the transfer statute if the commission of the offense is charged as a felony. So that's why in this statute, it's actually consistent with all of the other statutes to read it as saying, well, charging is the triggering event for transfer, but that doesn't mean that it's the triggering event for determining the child's age for juvenile jurisdiction purposes. But is that the plain reading of the statute? Well, just as I'm saying, I don't actually think it is the plain reading of the statute. And I think that this ‑‑ you know, I've cited to ‑‑ in my brief I said it. I think it's to Webster v. Woodford, which is a Bowie case, that says, the starting point for analyzing a statute for Bowie purposes is not just the language of the statute. It's the language of the statute, the legislative history. And in here, you have all arrows pointing in one direction, which is age at the time of commission of the offense is what guides the court's jurisdiction over juveniles. Well, you're not dealing with the Bowie issue right now. You're dealing with the reading of the statute, not ‑‑ you're dealing with whether or not the statute allowed this to be transferred to juvenile court, I take it. The Bowie issue is a separate issue. That's correct. I mean, the Bowie issue ‑‑ I mean, this is the springboard for the Bowie issue, because my point is that no one could have foreseen ‑‑ The only issue is the only issue that you got a certificate on. You didn't get a certificate on the reading of a statute. You got a certificate on the Bowie issue, as I read the certification. Well, I can understand your reading of it that way, but I think the issue is whether his due process rights were violated by being prosecuted as an adult. That's how I read the certified issue. Well, I ‑‑ Under the pre‑91 version of the statute. Well, number one, let's start from ‑‑ was the Bowie issue exhausted in state court? I mean, as I understand that, that came up for the first time in district court. In state court, you only argued that the reading of the statute did not allow the certification over for criminal jurisdiction. You never argued in state court, the so‑called Bowie issue, that no reasonable person could have thought that they would be criminally liable if they committed a crime when they were 16 and could be prosecuted as an adult when they reached 17. You never argued that in state court, did you? If you did, would you have referred something in the record that shows that? Yes, I'd be happy to. And what I'd like to do is just take a minute to sort of trace how this issue gets developed. What happens ‑‑ now, Bowie is not ‑‑ I don't have as part of the record in the district court the briefs on the mandamus action. The inference from the pleadings is that Bowie was not raised in those pleadings. But the issue of a due process violation based on the application of this statute, whether it was briefed that way or not, is clearly set up. Because at the district court certifying Castillo, his counsel ‑‑ and that's what I do have in the record, and that reference I'm talking about is at 418 of the excerpt. His counsel is arguing we have to take the law as it stands today on the books. So that's how he's talking about the issue. And I think that Springer's dissent in Castillo 1 is clearly talking about some kind of due process issue because Springer, who's the architect of Nevada juvenile jurisprudence in that era, is saying, no, this is a change in the law, change in the law. You can't do this to this person. It's a change in the law. Then let's fast forward, and then on direct appeal, again, it's raised as a due process issue, whether his certification or whether the court has jurisdiction over this case. Fast forward to postconviction, where he definitely there raises it as a ex post facto violation. He raises it and he cites Bowie. The state cites Bowie at 367 of the record. Castillo cites Bowie at 484 of the record. And the court does not mention Bowie in its decision, but it rejected that claim on the merits, saying that he failed to show prejudice. So we actually have a ruling on the Bowie claim on the merits. And then it references its Castillo 1 decision. And I think that this court can very fairly read that as we've done this. We're not going there. It wasn't a change in the law. End of story. No Bowie. So I think it is exhausted. But I also think that, and I just want to sort of, since we're on this point, it's exhausted, but I'm not sure that there's a full enough Bowie discussion to warrant any deference to the State court decision on this issue. I think it would be a de novo decision by this court to determine whether it's objectionably unreasonable. Counsel, you're down about two minutes. You might want to reserve. I'll reserve the time. Thank you. I don't see Mr. Robert Wieland, I think. That's correct, Your Honor. My name is Heather Proctor. I'm a Deputy Attorney General with the State of Nevada. Mr. Wieland was unable to attend this morning. Okay. Very fine, Ms. Proctor. You're also a Deputy Attorney General? Correct. Yes, very good. You may proceed. In this matter, Mr. Castillo is not entitled to federal habeas relief. As has been noted, the Nevada Supreme Court in Castillo 1 simply interpreted a state statute. There was no reference, there was nothing that was contrary to a reasonable application of clearly established state law. Rather, it was simply an interpretation of a state law based on the clear language of that statute. I think they're arguing retroactive criminalization in the interpretation of that state law, which sort of transmogrifies it into a due process claim. How do you sort that out? Through Castillo 1? Well, in terms of what they're arguing here. In that term, the language of the statute was still clear prior to the Castillo 1 decision. The language in three minors, as counsel noted, was strictly dicta. It was not binding on the court. The title of the statute, as it appeared prior to 1991, was procedure when person 16 years or older is charged with felony. That is the clear language of the title, the clear language of the statute, provided that an individual had to be charged when they were 16 years old. It had no reference to the commission of the crime. In terms of the other statutes that were cited by counsel, all those statutes are very clear that they specifically state that the commission of the crime has to be done by the individual by the specified age. 62.080 specifically does not state that. But one could, according to the petitioner, say that it infers that because there's no other state statute which allows a juvenile to commit a crime at under 16 or under whatever the age is of juvenile delinquency and be criminally charged upon reaching a majority. Actually, I would argue the exact opposite. All of the other statutes specifically provide that the individual has to be a certain age when the crime is committed. 62.080 specifically does not make that reference. It specifically references only when the date of the crime is – when the charge is applied to a 16-year-old. It does not specifically require that the commission of the crime be when the individual is 16. And so, I would argue that the statute that's in front of me by the absence of the language, NRS 62.080, is clear that it specifically focuses on the date it was charged, not on the commission. Well, it's also obvious that the legislature themselves must have interpreted that way because they immediately, upon this case being adjudicated, amended the statute to make it certain that it couldn't happen again. Unfortunately, based on the clear language of the statute, however, as it was read – and unfortunately, we do not have any reference to the legislature's intent from 1941 when this statute was enacted. But from the clear language of the statute prior to 1991, it did provide that it was strictly based on when it was charged. But can't you say by reason of the amendment of the statute, the legislature read it differently? Or meant to have it read differently? It's certainly something that could be inferred. However, we would also note that from the few committee notes of the legislature, they did reference Castillo I, and they did not retroactively apply the amendment to Mr. Castillo. In effect, what Petitioner is arguing is the retroactivity of the amendment would have corrected a legislature's mistake. However, the legislature specifically did not apply that amendment retroactively to Mr. Castillo to the case that they were very well aware of at the time. Now, assuming that retroactive application argument has been preserved in COA, what's your response to the assertion that as a matter of Federal constitutional law, the new statute should have been or must be interpreted retroactively I would refer the Court to the United States Supreme Court case of Lansgraf versus USI. In that case, the Supreme Court revisited many of its earlier holdings regarding the retroactivity of the statute. In that case, they specifically created an analysis for determining the retroactivity of a statute. It is a twofold analysis. First, if Congress's intent was clear, then it governs. If not, then it is left to the Court's discretion to determine retroactivity. This is not exactly, they don't say it's not a retroactive statute, but it's more like a jurisdiction scripting statute. And in Federal court, we would apply the statute in effect at the time of the, as long as the case is on appeal. In Lansgraf, one of the things that it did cite were some of the Federal statutes, or excuse me, the Federal case law, which stated that jurisdictional statutes would be retroactively applied. However, if you look at the analysis, all the references are to usually that will occur, may occur. There's nothing that requires that a change in jurisdictional statute must be applied retroactively. That's the Lansgraf analysis that is eventually left to the Court's discretion in order to determine the retroactivity of that statute. Could you comment on the Bowie claim? I think the Bowie claim is very interesting. I don't think anyone, including the Nevada legislature, ever thought someone like the Petitioner here could be prosecuted criminally when reaching 17. The Bowie claim is very interesting, because his position is there's no way I could have thought that if I did this, when I reach my majority, I could be criminally charged. Unfortunately, I would simply direct the Court again to the fact that the clear language of the statute states and emphasizes on the date that it is charged. That is fair warning that if an individual is charged with a crime after they are 16, then the statute will apply. Now, there are jurisdictional protections within the juvenile court to protect an individual based on age and when charges are brought. However, the clear language of the statute states it is dependent on when they are charged. Is the Bowie claim exhaustive in State court? I don't believe it is. It was not brought up in State court. State court focused primarily on the jurisdictional question, which was determined into C01. But that's the only one that we gave. Well, actually, for the other, the statutory interpretation one, an application that has been ruled on, I don't think, has been ruled on by us. Correct. But the district court gave COA on the Bowie claim. Correct. We would still stand by our statement that it is still unexhausted, because it was not. What about Ms. Trom's argument that Bowie was specifically raised in the briefs? I don't know if we can get to those briefs, but apparently that's her assertion. What's your response? I would simply state that the assertion was not brought before the U.S. district court, and therefore, the claim is still unexhausted. The briefs that she refers to are not a brief. Exhaustion is exhaustion at the State court level. Correct. So the issue then was, was it brought before the State court, and opposing counsel tells us that it was in the briefs. Correct. In State court. Do you agree or disagree? It was in the briefs, in the Mandamus brief, correct. Well, that sounds like exhaustion to me. We would still stand that it was unexhausted before the court. If there are no other questions. Any further? If not, thank you, counsel. We will have some rebuttal from Ms. Trom. I think that there's a little ‑‑ I just want to make a point of the fact that I think that Ms. Trom's point about jurisdiction stripping, and this goes to issue number two, which you're correct, is an uncertified issue. But as I briefed, the court actually, the district court actually treated these issues as basically two sides of the same coin and denied them on the same grounds. And I have the citations in my brief to deal with that. Landgraf explicitly talks about, and there's been more recent decisions since that time, that talk about jurisdiction stripping statutes take effect immediately. And I don't actually just have to rely on... That's in Federal court. That's the rule. I'm just about to get to that. I'm not too sharp on the bottle law. I'm just about to get to that. But I actually think that all Castillo needed here was for the court to apply its own rule, that it applies changes in the law prospectively. This is a change in the law that goes to the jurisdiction of the court. All he wanted it to happen was to apply prospectively to his case, which was not final at the time. So that's all he needed was under Nevada law. Now, understandably, Nevada can decide what Nevada law is about juveniles. But if you compare this case to GUI, there was no criticism that the South Carolina Supreme Court could determine what the law is. You just can't do a switch on a person that has criminal penalties. And the GUI, the case, the interpretation that the court put forward was not so far-fetched, but it just wasn't the law at the time when the person committed the crime. And that's basically what has happened here. And finally, this is really, I just want to remind the court, this injustice is such a unique, it's a really unique case in Nevada law. Never before this case had this transfer statute been exploited in this bizarre way. The legislator tried to fix it. The Nevada Supreme Court defied the legislature. And then for all other defendants, the statute has been fixed. So this court can correct this particular problem with respect to this defendant and not create some kind of new rule that's going to be a problem about interpreting State law. You can just correct the injustice, which has been tried to fix before, but without success. Thank you for your time. Thank you, Mr. Trump. The case just argued will be submitted for a decision. And the court will take its morning recess. Thank you. Thank you.
judges: O'scannlain, Cowen, Bea